IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MORRISVILLE PHARMACY, INC., Plaintiff, v. HARTFORD CASUALTY INSURANCE CO., Defendant. | CIVIL NO. 09-CV-02868 |

## MEMORANDUM OPINION AND ORDER

RUFE, J.                                                          October 28, 2010

This is an action for breach of insurance contract and bad faith under Pennsylvania law. It was properly removed from the Court of Common Pleas in Philadelphia on the basis of diversity jurisdiction. Before the Court is Defendant's Motion for Summary Judgment on both counts of the Complaint. For the reasons that follow, Defendant's Motion will be granted and judgment will be entered in favor of Defendant.

I.    Factual and Procedural Background

Plaintiff Morrisville Pharmacy ("Pharmacy") was at all relevant times operating under an "all risk" insurance policy ("Policy") issued by Defendant Hartford Casualty Insurance Co. ("Hartford"). Plaintiff filed an insurance claim for insurance benefits on December 12, 2008, initially claiming that the loss was caused by theft from the Pharmacy in August or September 2008. Plaintiff now alleges that the property owner Cindy Shack caused the loss by changing the Pharmacy's locks on September 29, 2008 so that the Pharmacy owner, Carol Markowitz, could not enter and remove the medications, documents, and equipment that belonged to the Pharmacy.

1

According to an August 1, 2008 police report, the police investigated an attempted suicide by Ms. Markowitz, who overdosed on OxyContin in the Pharmacy, resulting in a prolonged hospitalization.[1] No theft or burglary was reported on that date. It is undisputed that Ms. Markowitz was hospitalized on August 1, 2008, and remained in a hospital or rehabilitation facility until September 27, 2008.[2] The pharmacy was open for part of the day on August 4, 2008, run by temporary employees under the supervision of Ms. Markowitz's sister.[3] Thereafter, it was closed. A sign indicating that the store was closed was posted on the door.[4] During the month of September 2008, Ms. Markowitz's sister removed most of the Pharmacy's products, including the non-narcotic prescription medications and the non-medicinal products, and placed them in storage.[5] Ms. Markowitz was aware that this property had been removed and stored by her sister, and that property remained accessible to her.

On September 15, 2008, Ms. Shack's attorney wrote to Ms. Markowitz, noting that the Pharmacy was no longer open for business and asking her to surrender the premises, remove her belongings, and return her keys.[6] Ms. Markowitz did not respond to this correspondance.

On September 29, 2008, Ms. Markowitz attempted to use her key to enter and reclaim the narcotic pharmaceuticals inventory, computers, business records, security cameras, shelving, and business supplies locked inside the Pharmacy. Because Ms. Shack had changed the locks earlier

---

[1] Def. Ex. B.

[2] Def. Ex. C.

[3] Def. Ex. D.

[4] Def. Ex. E.

[5] Def. Ex. F.

[6] Def. Ex. J.

2

that day and secured the doors with a heavy chain, Ms. Markowitz could not enter the Pharmacy.[7] Ms. Markowitz reported the lock change to the police. The police report dated September 29, 2008 stated that the real property owner had changed the locks on the Pharmacy, locking the business proprietor out of the building, after sending a letter telling the proprietor to vacate the premises.[8] The report characterized the matter as a civil dispute and noted no loss of Pharmacy property.[9]

On November 3, 2008, Mr. Ippolito, Ms. Shack's attorney, sent a letter to Ms. Markowitz, noting that she had abandoned the premises and left behind controlled substances.[10] He further noted that, as the licensed pharmacist, Ms. Markowitz was responsible for the custody of the Pharmacy's controlled substances.[11] Mr. Ippolito asked Ms. Markowitz to contact him within ten days to discuss arrangements for the removal of the controlled substances.[12]

Ms. Markowitz responded on November 10, 2008, asking Mr. Ippolito to contact *her* within ten days to arrange a time when she could remove the Pharmacy's remaining personal property from the store.[13] In that letter she noted that was no longer legally responsible for the

---

[7] Ms. Shack did not have a key to the Pharmacy prior to September 29, 2008. See Def. Ex. G. She was accompanied by the Pharmacy's two temporary employees when she changed the locks on September 29, 2008. See Def. Ex. D and E. The temporary pharmacist retained the key to the cabinet containing the controlled substances, the lock to which was not changed. See Def. Ex. D.

[8] Pl. Ex. B.

[9] Id.

[10] Def. Ex. L.

[11] Id.

[12] Id.

[13] Pl. Ex. D.

3

narcotics in the store,[14] as she had relinquished her DEA license on October 1, 2008. Mr. Ippolito did respond to that letter but his response did not arrange a time for Ms. Markowitz to remove the Pharmacy's remaining personal property.[15] He did, however, ask for additional information relating to the proper disposition of the narcotics.[16]

On December 12, 2008, Plaintiff filed a claim with Hartford, alleging direct physical loss of Pharmacy property. Plaintiff alleges that it has submitted adequate proof of loss, and argues that the loss is covered under its "all risk" policy. In her tape recorded statement to Hartford, Ms. Markowitz stated that there was a theft sometime in September, that "the door, the locks were broken. . . ."[17] When asked what was taken, she answered:

> I don't know. All I know was what was left in the building at the time of, uh, when they broke in. What was, what was left in the building were the narcotics and the, all the necessary, um, files concerning my customers, all the transaction files like accounts receivable, um, and anything else I needed to run the building.[18]

Later in the conversation she admitted that her claim was simply that Ms. Shack prevented access to files and documents in the building, and alleges that this prevented her from taking an offer for sale of the pharmacy files. Ms. Markowitz did not answer directly when asked if steps had been taken to retrieve the remaining Pharmacy property from the store.[19] Hartford was still evaluating the claim when this lawsuit was filed. The remaining contents found in the Pharmacy are now

---

[14] Id.

[15] Pl. Ex. E.

[16] Id.

[17] Pl. Ex. F.

[18] Id.

[19] Id.

4

being stored by Defendant's counsel at his law firm.[20]

II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), a court may grant summary judgment only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[21] A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.[22] A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."[23]

A party moving for summary judgment has the initial burden of supporting its motion by reference to admissible evidence.[24] If this initial requirement is satisfied, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial."[25] The nonmoving party may meet this burden either by submitting evidence that negates an essential element of the moving party's claims, or by demonstrating that the movant's factual evidence is insufficient to establish an essential element of its claims.[26] The facts the nonmovant relies on for these

---

[20] A few items may be unaccounted for, including Ms. Markowitz's personal laptop computer, a red notebook containing drug inventory records, and some OxyContin. However, it is not clear when or how these items were lost, if they were lost at all and not placed in storage by Plaintiff's sister or Defendant's counsel.

[21] Fed. R. Civ. P. 56(c).

[22] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

[23] Id.

[24] Callahan v. A.E.V., Inc., 182 F.3d 237, 252 n. 11 (3d Cir. 1999).

[25] Fed. R. Civ. P. 56(e)(2).

[26] Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).

purposes also must be demonstrated by admissible evidence.[27]

In considering a summary judgment motion, the Court does not weigh the evidence or make credibility determinations; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."[28]

III. Discussion

    A. Count I: Breach of Contract For Failure to Cover Direct Physical Loss

The parties do not dispute the material facts of this claim.[29] Instead, they dispute the legal question of whether the Plaintiff suffered a direct physical loss of property, as defined by its insurance policy. When the insured purchases an "all risk" policy, the insured has the burden to show that a loss has occurred, and then the burden shifts to the insurer to show that the loss falls within a policy exclusion.[30] In this case, Hartford contends that no covered loss occurred. There is no evidence of theft or burglary at the Pharmacy between August 1, 2008 and September 29, 2008. Furthermore, Defendant argues, most of the contents of the Pharmacy were moved to storage by Plaintiff's agents, and the remainder were placed in storage by Defendants and are retrievable by Plaintiff at any time. There is no evidence that any items were stolen or otherwise lost from the Pharmacy. The Court agrees that Plaintiff has put forth no genuine issue of material fact in support of a finding that there any items were stolen or lost from the Pharmacy.

---

[27] Callahan, 182 F.3d at 252 n. 11.

[28] Anderson, 477 U.S. at 255.

[29] Plaintiff notes that Defendant failed to provide a Statement of Stipulated Material Facts as required by this Court's revised alternative summary judgment procedure. However, the Scheduling Order in this case was issued on August 12, 2009, before the Court amended its procedure to add such a requirement. The Court finds that the Defendant's Motion complies with its August 12, 2009 Order.

[30] Betz v. Erie Ins. Exchange, 957 A.2d 1244, 1256-57 (Pa. Super. 2008).

The Pharmacy now claims that the direct physical losses were caused when Ms. Shack, the building owner, changed the locks on the store on September 29, 2008, and not from theft. Specifically, Plaintiff argues that "because of her inability to regain possession of these items of business personal property before they lost all resale value, Morrisville Pharmacy suffered a loss." Plaintiff explains that some of the prescription and non-prescription items, most of which were moved to storage by Plaintiff's own agents, were rendered worthless because Plaintiff did not have timely access to valuable records about those products while the records were locked in the store.

In fact, it appears that Ms. Shack, through her attorney, first asked Plaintiff to remove all of its belongings and surrender the property on September 15, 2008, two weeks before Ms. Shack changed the locks. In a letter dated November 3, 2008, Ms. Shack, again through her attorney, made at least one additional offer to allow access for the purpose of removing the belongings after the locks were changed. In the meantime, Ms. Markowitz relinquished her DEA license on October 1, 2008, just three days after the locks were changed on the Pharmacy, when she was unable to reach Ms. Shack by telephone.[31] The Court finds that Plaintiff has set forth no genuine issue of material fact tending to prove that any loss of inventory or its value was necessarily incurred as a result of the change in the locks. To the extent that there was a loss, it was due to Plaintiff's failure to take reasonable action to mitigate its loss (e.g. ignoring requests to contact Ms. Shack's attorney and arrange a time to pick up the remaining inventory and other personal

---

[31] Def. Ex. M.

7

property).[32]

The Court further finds that, even if there was a "loss," Hartford may properly deny coverage on the grounds that, under Pennsylvania law, "all risk" policies do not cover direct physical losses stemming from non-fortuitous events.[33] Whether an alleged loss is fortuitous is a question of law for the Court.[34] It is undisputed the Ms. Shack was the owner of the real property in which the Pharmacy operated, and Ms. Markowitz and Ms. Shack had been in negotiations for the sale of the real property to Ms. Markowitz.[35] The negotiations stalled in April 2008,[36] months before the events at issue in this case. When it appeared that Ms. Markowitz had ceased to operate the Pharmacy and removed the majority of the Pharmacy's personal property, and when Plaintiff did not respond to a letter from Ms. Shack's attorney asking her to relinquish the now abandoned property, Ms. Shack reclaimed possession of her property by changing the lock. Any losses in this case arose from a business dispute between the property owner and the Pharmacy owner, and Plainitff could have foreseen the lockout on September 29, 2008 based on Mr. Ippolito's September 15th letter. Therefore, any loss suffered by Plaintiff falls within a policy exclusion for losses arising from non-fortuitous events. Accordingly, the Court finds that had Plaintiff suffered any direct physical loss from the lock change, it would have fallen under this

---

[32] Thompson v. DeLong, 267 Pa. 212, 217-218 (1920) (injured parties may not stand idly by and permit a loss to increase, and then hold a party liable for a loss which could have been prevented by reasonable efforts).

[33] InterMetal Mexicana, S.A. v. Ins. Co. of N. Am., 866 F.2d 71, 74-75 (3d Cir. 1989) ("In addition to the exclusions named in the policy itself, every 'all-risk' contract of insurance contains an unnamed exclusion-the loss must be *fortuitous* in nature.")

[34] Id. at 74, 77.

[35] Def. Ex. C and G.

[36] Def. Ex. C.

8

specific policy exclusion for non-fortuitous losses.

B. <u>Count I: Breach of Contract for Failure to Cover Business Interruption Loss</u>

The Hartford policy includes coverage for loss of business income resulting from suspended operations during restoration necessitated by a direct physical loss of covered property. Plaintiff argues that it was forced to cease its business operations when it was locked out of the Pharmacy by Ms. Shack and lost access to important business records. However, the undisputed evidence shows that business operations ceased completely as of August 5, 2008, nearly two months prior to the lockout, due to Ms. Markowitz's extended hospitalization. There is no evidence that the Pharmacy intended to resume operations when Ms. Markowitz was released from the hospital. In fact, the evidence shows that the majority of the inventory was moved into storage by Ms. Markowitz's sister during the month of September 2008, and the transfer of inventory began prior to the receipt of the September 15th notice to vacate from Ms. Shack's attorney, and well before the lockout on September 29.[37] Therefore, the Court finds the Plaintiff has no viable claim for Hartford's failure to cover its losses due to business interruption.

C. <u>Count II: Hartford Acted in Bad Faith</u>

Plaintiff brings a bad faith claim pursuant to 42 Pa.C.S.A. § 8371, alleging that Hartford unreasonably delayed payment on Plaintiff's claim. Plaintiff argues that the duration of Defendant's investigation, in addition to its failure to obtain statements from Ms. Shack and her husband in the course of its investigation, constitutes bad faith misconduct in the handling of the claim. Under Pennsylvania law, bad faith is defined as "any frivolous or unfounded refusal to pay proceeds of a policy . . . through some motive of self-interest or ill will; mere negligence or

---

[37] Def. Ex. F.

bad judgment is not bad faith."[38] A bad faith claim must be proved by clear and convincing evidence that "the insured did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim."[39]

First, the Court notes that Defendant did not deny benefits under the policy prior to the filing of this lawsuit, although it now takes the position that no covered loss occurred. Plaintiff's claim is based on a *delay* in investigating the claim, and not on an adverse decision rendered by Defendant. Plaintiff cites to no case law in which a court permits a claim for bad faith based upon an insurer taking five months to investigate a claim, only three of which followed the claimant's submission of proof-of-loss statements.[40] During Ms. Markowitz's initial statement to the insurance company, she stated that she could not be sure if anything had been taken from the pharmacy. Despite two telephone reminders from Defendant, on January 14th and 30th of 2009, Plaintiff did not file proof of loss until February 18, 2009.[41]

Furthermore, the record demonstrates that Defendant reasonably investigated Plaintiff's

---

[38] Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994), appeal denied 659 A.2d 560 (1995); see also, Tenos v. State Farm Ins. Co., 716 A.2d 626, 631 (Pa. Super. 1998).

[39] American Franklin Life Ins. Co. v. Galati, 776 F.Supp. 1054, 1064 (E.D.Pa.1991); MGA Ins. Co. v. Bakos, 699 A.2d 751, 754 (Pa. Super. 1997) (citing Terletsky, 649 A.2d at 688).

[40] According to the affidavit of Jonathan Wheeler, Esq., attached to Plaintiff's Answer in Opposition to the Motion for Summary Judgment, the Complaint was prepared around April 21, 2009, a little over four months after Plaintiff provided notice of loss on December 12, 2008, and two months after Plaintiff submitted a schedule of lost contents on February 10, 2009. The Complaint was filed on May 14, 2009. Defendant cites to numerous cases in which Courts have found that spans of thirteen to fifteen months to process claims are reasonable and not indicative of bad faith, including Williams v. Hartford Cas. Ins. Co., 83 F.Supp. 2d, 567, 572 (E.D. Pa. 2000); Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 592 (E.D. Pa. 1999); Quaciari v. Allstate Ins. Co., 998 F. Supp. 578, 582-83 (E.D. Pa. 1998). The Court finds the cited cases persuasive.

[41] Def. Ex. Q.

claim after the proof of loss was submitted on February 10, 2009. Hartford acknowledged receipt of the claim on February 18, 2009. Defendant obtained police reports regarding calls to the Pharmacy in August and September 2008, neither of which indicated that any theft or loss had occurred at the Pharmacy.[42] Defendant did not deny the claim on this basis, but rather referred the case to the Special Investigation Unit, which conducted an ongoing investigation until May 2009 when Plaintiff filed the present lawsuit. Hartford sent letters to Plaintiff on March 6, 2009, April 7, 2009, May 5, 2009, and June 4, 2009 stating that the claim was still under investigation by the Special Investigations Unit or that a final report was pending.[43] File notes indicate that Defendant was actively conducting an investigation of the claim during this time span. The Plaintiff has not raised any genuine issue of material fact as to whether the Defendant spent an unreasonable amount of time investigating the claim or otherwise acted in bad faith. Plaintiff has also failed to point to facts suggesting that the delay in processing the claim was purposeful and motivated by self-interest or ill will. The mere fact that Plaintiff allegedly suffered an injury from the delay in processing the claim does not raise an issue of material fact as to whether bad faith misconduct was the reason for the delay.

Because the Court will dismiss the Plaintiff's bad faith claim, it need not consider Plaintiff's claim for compensatory damages arising from the alleged bad faith misconduct (i.e. damages for Plaintiff's alleged lost opportunity to sell the Pharmacy to Rite Aid).

IV. Conclusion

For the reasons set forth above, the Court will grant Defendant's Motion for Summary

---

[42] Def. Ex. Q.

[43] Pl. Attach. B.

11

Judgment on both Counts of the Complaint, and will dismiss Plaintiff's claims with prejudice.